IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO. 5:14CV175-RLV

| | |
|---|---|
| KCA PENLAND HOLDINGS CORP., ) <br> a North Carolina corporation, ) <br>         Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GREAT LAKES DIRECTIONAL ) <br> DRILLING, INC., a Pennsylvania ) <br> Corporation, ) <br>         Defendant. ) <br> _____) | **Memorandum and Order** |

**THIS MATTER** is before the Court upon the Plaintiff's Motion to Dismiss Defendant's Counterclaim (Count II), filed November 19, 2014. (Doc. 5). Defendant responded on December 8, 2014. (Doc. 7).

### I.     Background

This dispute arises out of a commercial construction contract entered into between KCA Penland Holdings Corporation ("KCA") and Great Lakes Directional Drilling, Inc. ("Great Lakes") on or about May 2, 2014. (Doc. 1, Exh. A / Complaint, ¶ 6). KCA hired Great Lakes to perform work on its behalf in connection with a fiber optic cable installation project that derived from a separate contract between KCA and a third-party. (Id., ¶¶ 6, 7). KCA and third-party Sidera Networks, LLC, d/b/a Lightower ("Lightower") had agreed that KCA would be the contractor for installation of fiber optic cable for Lightower's fiber optic network within the State of Virginia (the "Lightower Project"). (Id., ¶¶ 6, 7).

The agreement between KCA and Great Lakes, the subject matter of the instant action, was memorialized in two different writings. (Id., ¶ 8). One of the contracts ("Contract #1") addressed the parties' expectations regarding the specific work / tasks to be completed. (Id., ¶ 9). The other contract ("Contract #2"), entitled "Non-Compete Agreement" ("Non-Compete"), essentially prohibited Great Lakes from soliciting the business or customers of KCA, including Lightower, for a period of three years after execution of the Non-Compete. (Id., ¶ 11).

In June 2014, Great Lakes undertook its work on the Lightower Project on KCA's behalf. (Id., ¶ 15). According to KCA, Great Lakes failed to perform under the terms of Contract #1 in various ways. (Id., ¶¶ 16−18, 29). KCA further alleges, upon information and belief, that Great Lakes solicited the Lightower business, which prompted Lightower to request that KCA step aside (forego rights under its contract with Lightower) and allow Great Lakes to complete the job working directly for Lightower. (Id., ¶¶ 18−20, 38). Great Lakes began working directly for Lightower on the Lightower Project despite the Non-Compete and despite KCA's "valid and legally binding contract with Lightower that was never properly terminated . . . ." (Id., ¶¶ 16−21, 23, 26−39). KCA contends that in light of its alleged breach, Great Lakes forfeited its right to all compensation under the contract, including compensation already paid to Great Lakes in the amount of $125,748.50. (Id., ¶¶ 10, 24, 30−31).

On September 18, 2014, Plaintiff KCA filed a Complaint in the North Carolina General Court of Justice, Superior Court Division, Iredell County, North Carolina, alleging breach of contract, breach of the non-compete, wrongful interference with contract, unfair and deceptive trade practices, and breach of the implied covenant of good faith and fair dealing against Defendant Great Lakes. (*See KCA Penland Holdings Corp. v. Great Lakes Directional Drilling, Inc.*, Case No. 14CV01995).

On October 23, 2014, Defendant timely removed the case to this federal district court.

On October 30, 2014, Great Lakes filed its Answer and Counterclaim asserting that KCA had committed breach. (Doc. 3 –Answer and Counterclaim). In its Answer, Great Lakes admits that KCA and Great Lakes executed two contracts that resulted in Great Lakes working as a subcontractor for KCA on the Lightower project. (Answer, ¶ 7). However, Great Lakes denies KCA's factual allegations of breach. (Id., ¶¶ 16−23). Great Lakes contends that on July 25, 2014, KCA, through its owner and President, advised Great Lakes in writing that, as of July 31, 2014, KCA no longer had an "active contract" with Lightower. (Id., ¶ 20). Great Lakes represents that it ceased its work for Lightower consistent with KCA's instruction for all subcontractors to stop working on the project. (Id., ¶¶ 20−22). Great Lakes states that it "reasonably relied" upon KCA's representation that it no longer had an "active contract" with Lightower in subsequently commencing its work directly for Lightower on August 5, 2014. (Id., ¶¶ 21, 23). With respect to damages claimed by KCA, Great Lakes claims KCA still owes it $556,684 for services Great Lakes performed, and that KCA received payment from Lightower. (Id., ¶ 24).

In its Counterclaim, Great Lakes alleges in Count I that KCA's failure to pay the $556,684 under Contract #1 constitutes breach of contract. (Counterclaim, ¶¶ 4−11). Great Lakes' second counterclaim alleges the same facts but asserts that under the doctrine of unjust enrichment, it should recover $556,684 from KCA for work on the Lightower project accomplished by Great Lakes on KCA's behalf. (Id., ¶¶ 1−11, ¶¶ 12−15).

The lawsuit is properly removed, 28 U.S.C. § 1441(a), and jurisdiction supplied by diversity of citizenship, 28 U.S.C. § 1332(a)(1).

## II. Standard

A Rule 12(b)(6) motion tests the legal and factual sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). In reviewing a motion made under this rule, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), seen in the "light most favorable to the plaintiff." *Schatz v. Rosenberg*, 943 F.3d 485, 489 (4th Cir. 1991). However, the court is not bound to accept legal conclusions asserted by plaintiffs when reviewing such a motion. *Id.* A complaint must plead facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009). A sufficient pleading must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Papasan v. Allain*, 478 U.S. 265, 268 (1986).

## III. Discussion

KCA moves to dismiss Counterclaim II asserted by Great Lakes. KCA contends that a quasi-contract claim is only cognizable where no express contract exists that speaks to the same subject matter. Indeed, the proposition that a contract implied by law cannot be asserted where an express contract exists is horn book or blackletter law. *See Whitfield v. Gilchrist*, 497 S.E.2d 412, 415 (N.C. 1998); *Hall v. Mabe*, 335 S.E.2d 427, 429 (N.C.App. 1985) ("an express contract and an agreement implied by law cannot co-exist"; implied contract does not bar unjust enrichment claim).

In this case, it is undisputed that two express contracts govern the relationship between

KCA and Great Lakes.[1] In addition, Defendant Great Lakes concedes that Count II, its unjust enrichment counterclaim, is only pled as an alternative legal theory. For this reason, Great Lakes states in its response: "Defendant will not oppose Plaintiff's Motion to Dismiss Count II of its Counterclaim. Defendant stands and is ready to prosecute Count I of its Counterclaim, and this Motion does not waive any of the rights, arguments, or facts related to or underlying Count I of Defendant's Counterclaim." (Response, 1). For these reasons, and in light of Defendant's willingness to forego prosecution of its alternative equitable counterclaim, KCA's motion will be <u>granted</u>.

IV. Order

**IT IS, THEREFORE, ORDERED** that Defendant's Counterclaim (Count II) alleging Unjust Enrichment is hereby **DISMISSED** *with prejudice*.

Signed: May 12, 2015

Richard L. Voorhees
United States District Judge

---

[1] This Memorandum and Order does not address the validity and enforceability of the two contracts between KCA and Great Lakes.